ASH

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Mukhammad Islom Azimov, *et al.*,

Petitioners,

v.

Kristi Noem, *et al.*,

Respondents.

No. CV-26-01232-PHX-JJT (DMF)

**ORDER**

Petitioners—a husband and wife—filed this action under § 2241 challenging their immigration detention. (Doc. 1). On February 23, 2026, the Court issued an Order to Show Cause (OSC) why the Petition should not be granted. (Doc. 3). Upon review of the briefing (Docs. 4, 5),[1] the Court will grant the Petition in part and order that Petitioners receive a bond redetermination hearing within seven days.

## I. BACKGROUND

Petitioners are natives of Kyrgistan and citizens of Russia. (Doc. 1 at 5). In December 2023, Petitioners travelled to Mexico and made arrangements through the CBPOne app to seek asylum in the United States. (*Id.* at 7). On March 2, 2024, pursuant to an appointment made through the CBPOne app, Petitioners presented themselves to immigration authorities and were taken into custody. (*Id.*). On May 9, 2025, an immigration judge (IJ) granted Petitioners asylum. (*Id.* at 8). The government appealed that decision (*id.*), and the Board of Immigration Appeals (BIA) subsequently remanded

[1] Petitioner has also filed a Motion to Expedite and Motion for Temporary Restraining Order, both seeking immediate release. (Docs. 7, 8). In light of this Order, the Court will deny these Motions as moot.

the matter back to the IJ. (*Id.*). On January 1, 2026, the IJ again granted Petitioners asylum, and additionally further granted withholding of removal. (*Id.*). The government again appealed that decision, and that appeal remains pending. (*Id.* at 9).

As of the date of this Order, Petitioners have been detained for more than two years.

## II. DISCUSSION

As an initial matter, the Court finds that Respondents have not discharged their obligations under the Court's Order to Show Cause (OSC) or 28 U.S.C. § 2243. Title 28, section 2243 provides that when a court directs a respondent to show cause for why a writ pursuant to § 2241 should not be granted, the respondent "shall make a return certifying the true cause of the detention." 28 U.S.C. § 2243. Echoing this statutory directive, the Court's OSC directed that "[a]ny response must be supported by documentary evidence including, if applicable, affidavits by individuals with personal knowledge of the factual statements made therein and signed under penalty of perjury." (Doc. 4 at 2).

Here, however, Respondents have provided no evidence at all. Accordingly, and at a minimum, Respondents have failed to demonstrate that Petitioners are properly and mandatorily detained pursuant to 8 U.S.C. § 1225. The Petition can thus be granted on this basis alone. 28 U.S.C. §§ 2241(c)(1), 2243.

In any event, the Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. It is well established that the Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. 216, 219 (2011).

. . .

. . .

**A. Statutory Basis for Petitioner's Detention**

"A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up). Respondents maintain that Petitioners are "applicant[s] for admission" for whom continued detention is mandatory pursuant to 8 U.S.C. § 1225(b)(2). (Doc. 4 at 2-4). Respondents are correct. Under 8 U.S.C. § 1225(b)(1)(B)(ii), Petitioners must "be detained for further consideration of the application for asylum" if the asylum officer determines at the time of the credible fear interview that the noncitizen has a credible fear of persecution. Although the IJ has now granted Petitioners asylum on two separate occasions, the government has appealed both grants. Considering that the IJ's most recent grant of asylum remains pending before the BIA, Petitioner does not have an administratively final grant of asylum. Hence, § 1225(b)(2) continues to govern Petitioners' detention in this action.

**B. Due Process**

This does not end the matter, however, as a petitioner may nevertheless be entitled to relief under the Constitution even when detained pursuant to statute. The Court thus turns to Petitioners' due process claim. The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

***1. Liberty Interest***

"A liberty interest may arise from the Constitution itself[[2]] . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). If a liberty interest is found, the Court then determines

[2] "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

whether the administrative procedures are sufficient considering the "particular situation."[3] *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

In the instant action, neither party has directly addressed whether Petitioners possess a cognizable liberty interest. Petitioners suggest they do have a liberty interest. (*See e.g.* Doc. 1 at 10 (observing that the Fifth Amendment "prohibits the federal government from depriving any person of 'life, liberty, or property, without due process of law.'") Respondents do not address the issue.

In *Wong v. Immigr. and Naturalization Serv.*, 373 F.3d 952 (9th Cir. 2004), the Ninth Circuit Court of Appeals addressed whether a noncitizen has a liberty interest in temporary parole. *See Wong*, 373 F.3d at 967. The court found that "[t]he INA does not create any liberty interest *in temporary parole* that is protected by the Fifth Amendment." *Id.* at 968 (emphasis added). "Rather, the statute makes clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney General." *Id.*

While *Wong* has some superficial relevance, the Court declines to conflate temporary parole with a request for a bond hearing before a neutral decisionmaker. Petitioners do not assert a liberty interest in temporary parole. Hence, *Wong* is inapplicable to the case at hand.

In *Wong Wing v. United States*, 163 U.S. 228 (1896), the Supreme Court "contrasted the case of an immigrant who could not challenge his immigration officer's 'exclusive authority to determine whether a particular alien seeking admission into this country' was so entitled, with another who could challenge, on due process grounds, the imposition of an immigration-related term of hard labor." *Id.* (quoting *Wong Wing*, 163 U.S. at 232–33, 235–38). The district court in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-

---

[3] The Court notes that due process is a flexible concept. This, however, "does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey*, 408 U.S. at 481.

BEM, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026),[4] noted that although *Wong Wing* "presented the particularly egregious circumstance of an 'infamous punishment,'" the Supreme Court expressed its holding in terms of the broader protections afforded by the Due Process Clause:

> Applying this reasoning to the fifth and sixth amendments, it must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by those amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law.

*Id.* (quoting *Wong Wing*, 158 U.S. at 238). The court observed that "[i]t makes sense to distinguish between 'rights regarding admission' and other interests that might be protected by the Due Process Clause." *Id.* (citing *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020)).

"The Government's countervailing interest, in the entry-fiction context, is its sovereign authority to 'admit [noncitizens] only in such cases . . . as it may see fit.'" *Id.* (citation omitted). "Where that sovereign prerogative is not implicated, however, the legal fiction loses its justification." *Id.* (citing *Zadvydas*, 533 U.S. at 699). "Unsurprisingly then, more than a century of Supreme Court case law confirms that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's admissibility." *Id.* (emphasis in original). Accordingly, where an immigration detainee challenges neither his order of removal nor any of the processes that produced those orders, his claims "do not implicate, nor even "relate[ ] to," the issue of [his] admissibility." *See id.* at *31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)).

. . .

---

[4] Although *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit, the Court is nonetheless persuaded by the analysis contained within *D.V.D.* Furthermore, undersigned does not stand alone within the District of Arizona in relying upon *D.V.D. See Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at *3–4 (D. Ariz. Mar. 9, 2026).

In short, neither a bond hearing nor release equates to admission. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025) (noting that, if a petitioner were released following a bond hearing, they "will be subject to the same removal proceedings as before, with no new right to remain"). "Thus, Petitioner does not purport to invoke any 'rights regarding admission.'" *Id.* at 110 (quoting *Thuraissigiam*, 591 U.S. at 140); *D.V.D.*, 2026 WL 521557, at *30 ("It makes sense to distinguish between rights regarding admission and other interests that might be protected by the Due Process Clause."). The Court thus concludes that Petitioners have a liberty interest protected under the Fifth Amendment. Petitioners are "'persons' within the United States," and the Fifth Amendment therefore "imposes constraints" on any process that deprives them of her liberty interests.

***2. Due Process Rights Regarding Petitioner's Prolonged Detention***

In arguing that their detention has become unconstitutionally prolonged, Petitioners cite *Mathews v. Eldridge*, 424 U.S. 319 (1976). (Doc. 5 at 5). However, Petitioners do not discuss in any detail the three-part *Mathews* test, merely concluding that "consideration of these factors demonstrates that Petitioners' continued detention is unreasonable."[5] (*Id.*). Respondents do not address *Mathews*. (Doc. 4).

Courts in this circuit and beyond have grappled over what test should be used to determine whether procedural due process requires relief for a noncitizen held pursuant to § 1225(b). *See Doe v. Andrews*, 1:25-cv-00333-JLT-HBK, at *15–17 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor test established in *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022)); *see also Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 U.S. Dist. LEXIS 46838, at *7 (W.D. Wash. Mar. 6, 2026) (applying the 6-part *Banda* test) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)); *Leonteva v. Noem*,

---

[5] Under the *Mathews* test, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

No. 4:26-cv-00043-SEB-KMB, 2026 U.S. Dist. LEXIS 52217, at *22 (S.D. Ind. Mar. 13, 2026) (applying the same 6-factor test, but calling it the *Jamal A* test) (*citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3598-LL-BJW, 2026 U.S. Dist. LEXIS 10299, at *11–15 (S.D. Cal. Jan. 20, 2026) (applying the 3-part *Mathews v. Eldridge* test) (citing *Mathews*, 424 U.S. at 335).

Out of the abovementioned tests, the Court finds the *Banda* test the most applicable to the situation at hand. Under the *Banda* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1118.

The Court finds the *Banda* test more suitable than the *Mathews* and *Lopez*[6] tests. Beginning with *Mathews*, the Court concurs with other district courts that have found that "while the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Lopez*, 631 F. Supp. 3d at 879. Put differently, the *Mathews* test is apt where the question is whether an administrative procedure provided is "constitutionally sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07.[7]

---

[6] Under the *Lopez* test, "the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879.

[7] In any event, the outcome applying *Mathews* and *Banda* would be the same—*i.e.*, Petitioners would be entitled to individual bond hearings. Applying the first *Mathews* element, the Court finds that Petitioners have a strong private interest in their liberty from prolonged civil detention. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'") (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Turning to the second element, considering the prolonged nature of Petitioners' detention, the Court finds a large risk of erroneous deprivation in the absence of an

Turning next to the *Lopez* test, the Court notes that this test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and] are, in essence, a truncated version of the factors enumerated in *Banda*[.]" *Andrews*, 1:25-cv-00333-JLT-HBK, at *14. Because the six-factor *Banda* test is more detailed than *Lopez* and is better suited for noncitizens held pursuant to § 1225(b), the Court accordingly elects to apply it.

*i. Length of Detention.*

The first *Banda* factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. Under the first *Banda* factor, where a petitioner's current detention exceeds a six-month threshold their "detentions become less and less reasonable." *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:26-cv-00039-TL, 2026 U.S. Dist. LEXIS 56882, at *8 (W.D. Wash. Mar. 18, 2026) (quoting *L.B.O.M. v. Hermosillo*, No. 2:25-cv-02695-GJL, 2026 U.S. Dist. LEXIS 21291, at *8 (W.D. Wash. Feb. 2, 2026). As noted, Petitioners have been held in DHS custody for more than two years, well beyond the six-month threshold, and in accord with the length of confinement other courts have found to be prolonged. *See, e.g.*, *Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 U.S. Dist. LEXIS 203614, at *13 (S.D. Cal. Oct. 15, 2025) (noting that 13 months without a bond hearing is prolonged); *cf. Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long

---

individualized bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (noting that the discretionary parole system envisioned under the Immigration and Naturalization Act is insufficient "to overcome the constitutional concerns raised by prolonged mandatory detention"). Hence, an individualized bond hearing would greatly mitigate the risk of a continued constitutional violation.

Finally, regarding the third *Mathews* factor, the government interest in detaining Petitioners without an individualized bond hearing is low. First, "[p]roviding petitioner[s] with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, No. 5:21-CV-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). Second, the fiscal burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."). Therefore, the third factor minimally favors the government. Accordingly, applying the *Mathews* test to Petitioners' more than two year detention, the Court concludes that due process requires that they be provided with individualized bond hearings.

time."). Accordingly, the Court finds the length of Petitioners' detention strongly favors granting relief.

*ii. Likely Duration of Future Detention.*

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, No. 1:25-CV-01921-DC-DMC-HC, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While the length of future detention is uncertain, considering the government's pending appeal before the BIA, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioners. *See Kadir*, 2025 U.S. Dist. LEXIS 203614, at *8 ("Petitioner's future detention can last several more months or even years during the adjudication of Respondents' appeal to the BIA.").

*iii. Conditions of Detention.*

The third factor requires the Court to consider the conditions of confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted). Petitioners assert—and provide evidence to support—that continued detention has exacerbated various medical issues. (*See e.g.* Doc. 8). Respondents do not address these conditions. Accordingly, the Court finds that this factor favors Petitioners.

*iv. Delays in Removal Proceedings.*

Next, the Court shall analyze the "fourth and fifth [*Banda*] factors—both which consider delays caused by the parties—together." *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025).

The fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioners. "Courts should be sensitive to the possibility that dilatory tactics by the removable noncitizen may serve not only to put off the final day of deportation, but also to compel a determination that the noncitizen must be released because of the length of his incarceration." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up). Here, there have been no delays caused by Petitioners. Petitioners have not contested any of the IJ's orders. Consequently, this factor favors Petitioners.

The fifth factor considers the delays in removal caused by the government. *Banda*, 385 F. Supp. 3d at 1120. "[I]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *11 (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10–11 (S.D.N.Y. May 23, 2018)).

As previously mentioned, the delays in this action were caused by Respondents' appeals of the IJ's decisions to grant Petitioners asylum status. Therefore, the fifth factor favors Petitioners.

*v.* *Likelihood of Removal*.

The final *Banda* factor requires the Court to consider "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous*, 2018 WL 2357266, at *11). Based on the current record, Petitioners have twice been granted asylum, and also been granted withholding of removal. Respondents offer no evidence to support a finding that their appeal will be successful. Therefore, the sixth factor favors Petitioners.

. . .

. . .

*vi. Conclusion.*

Considering that all of the *Banda* factors favor Petitioners, the Court concludes that Petitioners' continued detention under § 1225(b)(2) has become unreasonable. Therefore, Petitioners are entitled to relief.

**C. Remedy**.

Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral IJ. *See Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12 (finding that "there is no authority" supporting relief in the form of immediate release, but there is authority supporting relief in the form of a bond hearing) (cleaned up); *see also Lopez*, 631 F. Supp. 3d at 882 ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release."); *Kaur v. Lyons*, 2:26-cv-00217-KML, at *1 (D. Ariz. Apr. 9, 2026) (adopting the magistrate judge's recommendations for a 1225(b)(2) petitioner and granting a bond hearing). At the bond hearing, Respondents bear the burden of proving that Petitioners are a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to Petitioners' request for a bond hearing and is **DENIED** as to Petitioners' request for immediate release.

**IT IS FURTHER ORDERED** that a bond hearing shall be held within **SEVEN (7) CALENDAR DAYS** of this order.

1. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioners are a flight risk or danger to the community; or

2. In the alternative, the Government shall immediately release Petitioners under appropriate conditions of release.

**IT IS FURTHER ORDERED** that, if Respondents elect to provide Petitioners with a bond hearing rather than release, the parties shall file a joint status report with the Court within **THREE (3) DAYS** of the bond hearing.

**IT IS FURTHER ORDERED** that Petitioners' Motion to Expedite and Motion for Temporary Restraining Order (Docs. 7, 8) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that any motion for fees and costs pursuant to 28 U.S.C. § 2412 shall be filed within 30 days of final judgment. *See* 5 U.S.C. § 504; 28 U.S.C. § 2412(d)(1)(B), (d)(2)(g).

**IT IS FURTHER ORDERED** that the Clerk of Court must enter judgment accordingly and close this case.

Dated this 21st day of August, 2026.

Honorable John J. Tuchi
United States District Judge